**BOONE STATE BANK AND TRUST CO., Plaintiff,**

v.

**WESTFIELD INSURANCE CO., Defendant,**

**Iowa Automobile Dealers Association, Amicus Curiae.**

No. 64723.

Supreme Court of Iowa.

Nov. 12, 1980.

Dick L. Jensen of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for plaintiff.

Harry Watts and F. Richard Lyford of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for defendant.

W. Don Brittin of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for amicus curiae.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK and McGIVERIN, JJ.

McCORMICK, Justice.

The United States District Court, Southern District of Iowa, Central Division, has certified to us a question concerning the coverage of motor vehicle dealer's surety bonds furnished to the State of Iowa pursuant to section 322.4(7), The Code 1973 and 1975. The question is whether a motor vehicle dealer's floor plan financier can recover on the statutory bond for certain enumerated acts or omissions of the dealer. Because we hold that the bond only protects persons who purchase motor vehicles from the dealer, we answer the certified question "no."

The certified question arose from an action brought by Boone State Bank and Trust Co. (the bank) against Westfield Insurance Co., the surety of Boone Auto & Truck Center, Inc. (the dealer). Certified facts show that the bank seeks recovery from the surety on unpaid promissory notes of the dealer. The notes were executed by the dealer pursuant to a floor-plan agreement with the bank. The bank alleges its losses on the notes are covered by the dealer's statutory bonds. Two bonds are involved, one for $10,000 applicable to transactions in 1974 and one for $25,000 which covered a subsequent period. Cross motions for summary judgment raise issues concerning the dealer's alleged acts and omissions in selling motor vehicles in violation of various statutes and in breach of the financing agreement. The federal court has asked us to decide whether the bank is entitled to indemnity from the surety for losses caused by these alleged acts and omissions.

At the time material here, section 322.4(7) required an applicant for motor vehicle dealer's license to furnish a corporate surety bond running to the state:

. . . conditioned upon the faithful compliance by said applicant as a dealer . . . with all of the statutes of this state regulating or being applicable to the business of said dealer as a dealer in motor vehicles, and indemnifying *any person dealing or transacting business with said dealer* in connection with any motor vehicle from any loss or damage occasioned by the failure of such dealer

to comply with any of the provisions of chapter 321 and this chapter, including, but not limited to, the furnishing of a proper certificate of title to the motor vehicle involved in any such transaction. (emphasis supplied).

The surety's liability on the bond is measured under this statute. *State Surety Co. v. Lensing*, 249 N.W.2d 608, 611 (Iowa 1977). The controlling issue here is whether lenders are protected by the bond. In turn, this depends on whether they are included in the indemnifying language of the statute.

■ In contending the bond is intended to protect only the purchaser of motor vehicles, the surety relies on three arguments. First, it alleges that the motor vehicle title system was established to benefit the motor vehicle owner. Second, it asserts that security interests in motor vehicle inventory are accorded statutory protection only under the Uniform Commercial Code, chapter 554. Third, the surety argues that the small principal amount of the statutory bond shows it was intended only to protect purchasers of vehicles. In countering the surety's arguments, the bank relies on the broad language of section 322.4(7) which purports to extend the bond's coverage to "any person dealing or transacting business with said dealer in connection with any motor vehicle."

We agree with the surety that the certificate of title system is designed primarily to benefit the motor vehicle owner. This purpose is confirmed in the explanation attached to the original bill which was enacted in 1953. *See* H.F. 260, 55th G.A., (1953) ("This bill is primarily designed to benefit the motor vehicle owner...."); R. Hudson, *1953 Iowa Motor Vehicle Certificate of Title Law*, 3 Drake L.Rev. 3 (1953). It is also true that security interests in motor vehicle inventory are given statutory protection only under the Uniform Commercial Code. *See* §§ 321.45(2)(b), .50(1), (5), The Code. We also agree that the relatively small bond would not provide much protection if it were intended to cover inventory financiers as well as vehicle purchasers.

Moreover, the broad language of section 322.4(7) is not conclusive. While the term "any person" would ordinarily not appear to exclude lenders, its meaning is affected by its context. *See* § 4.1(2), .4, .6, The Code. Doubt is also cast on the scope of its application by the definitions in section 322.2. Although "person" is defined broadly in section 322.2(1), section 322.2(14) provides: "Nothing contained [in this chapter] shall be construed to require the licensing or to apply to any bank, credit union or trust company in Iowa."

Other jurisdictions have reached conflicting results under analogous statutes. *Compare State v. General Insurance Co. of America*, 179 N.W.2d 123, 125 (N.D.1970) (holding financiers to be protected), *with Insurance Co. of North America v. General Electric Corp.*, 119 Ariz. 97, 100, 579 P.2d 601, 604 (1978) (holding financiers are not protected). Courts in other jurisdictions agree, however, that statutes which require bonds to protect "purchasers" do not cover financiers. *See Genesee Bank & Trust Co. v. St. Paul Fire and Marine Insurance*, 47 Mich.App. 401, 209 N.W.2d 605 (1977); *Triplett v. James*, 45 N.C.App. 96, 262 S.E.2d 374 (1980).

We believe the legislature has answered the coverage question through an amendment to section 322.4(7) which was enacted during the pendency of the present litigation. *See* 1980 Session, 68th G.A., ch. 1094, § 39. In material part, section 322.4(7) now provides for indemnification of "any person *who buys a motor vehicle from the* dealer" rather than of "any person *dealing or transacting business with said* dealer." (emphasis supplied). The explanation attached to the bill which contained the amendment describes its purpose: "Section [39] clarifies the current law as it relates to protection provided to persons purchasing a vehicle from a dealer to assure that the bond is only to protect the purchaser of a vehicle." S.F. 2361, 68th G.A., (March 19, 1980).

■ We have previously discussed principles applicable in determining whether an amendment indicates an intent to change the meaning of a statute or merely to clari-

fy it. *See Barnett v. Durant Community School District*, 249 N.W.2d 626, 629 (Iowa 1977). *See also Orr v. Lewis Community School District*, 298 N.W.2d 256 (Iowa 1980). Applying those principles here, we conclude that the amendment to section 322.4(7) manifests a legislative intent to remove doubt from the statute rather than change its meaning. The legislature actually stated its purpose was to clarify the existing statute. As a result, we hold that the dealer's bonds in the present case protect only persons who purchase motor vehicles from the dealer. They do not protect the bank as a floor–plan financier. Therefore our answer to the certified question is "no."

The clerk is directed to proceed in accordance with Ia.R.App. P. 458.

CERTIFIED QUESTION ANSWERED.