**IOWA DEPARTMENT OF REVENUE, D. G. Briggs, Director, Appellee,**

v.

**IOWA MERIT EMPLOYMENT COMMISSION et al., Appellants,**

**Joseph Hottes, Intervenor-Appellant.**

No. 2–57254.

Supreme Court of Iowa.

June 30, 1976.

Rehearing Denied July 26, 1976.

Larry L. Seckington, Urbandale, for appellants.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., Harry M. Griger and Donald H. Capotosto, Asst. Attys. Gen., for appellee.

Gordon E. Allen, Des Moines, for intervenor-appellant.

Heard by REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES, and HARRIS, JJ.

RAWLINGS, Justice.

Appeal by respondents (defendants) Iowa Merit Employment Commission members and intervenor Joseph Hottes from trial court adjudication in certiorari proceeding holding defendant Commission exceeded its proper jurisdiction in entertaining Hottes' appeal from his discharge by petitioner (plaintiff) Iowa Department of Revenue Director. We affirm trial court.

Hottes was a probationary employee in the Iowa Department of Revenue (Department). April 24, 1973, his employment as a "Research Analyst II" was terminated.

July 21, 88 days after dismissal, Hottes appealed to defendant Iowa Merit Employment Commission (Commission), thereby seeking reinstatement and back pay. His appeal was based "on the fact that I was forced to resign by the appointing authority [Department] due to political discrimination and non-meritorious factors."

September 12, the appellate agency held:

"It is the decision of the Merit Employment Commission that there has been established by Mr. Hottes a prima facie case of political discrimination and it is directed that Mr. Hottes be restored to his former class of position. That Mr. Hottes serve the remaining part of his probationary period before he be granted or not granted permanent status in accordance with the Merit Act. That Mr. Hottes not be given back pay for the period of time since his termination, May 15, 1973, because of his highly questionable acts referred to as 'immaturity—he who asks equity must do equity.'"

September 21, Department commenced certiorari proceedings in Polk District Court alleging Hottes' appeal to Commission was untimely because not taken within 30 days from date of his discharge. Department asserted Commission was therefore without jurisdiction to entertain Hottes' appeal. Alternatively, it alleged Commission's finding of "a prima facie case of political discrimination" lacked support in the record. Upon these grounds it was contended Commission exceeded its proper jurisdiction or otherwise acted illegally.

September 27, Hottes was granted leave to intervene in the aforesaid certiorari action. His petition asserted Commission properly ordered he be reinstated, but incorrectly denied him back pay.

Hearing on petitioner's certiorari action ensued.

March 26, 1974, trial court vacated the Commission proceedings and in so doing found: (1) Commission lacked jurisdiction to entertain Hottes' appeal because it was not taken within 30 days from termination as required by Code § 19A.14; (2) the statutory 30 day appeals limitation cannot be extended to 90 days by administrative fiat, as rule 12.6(19A), I.D.R. (1973), at 650 purports to do; therefore, (3) Hottes' appeal to Commission should have been dismissed for want of jurisdiction.

By virtue of the foregoing trial court did not rule on Department's alternate claim that Commission's findings lacked evidentiary support.

One major issue is presented for review: Was Hottes' appeal to Commission timely? Subsidiary questions involved are: (1) Is Department estopped to deny the validity of merit employment rule 12.6(19A), which allowed 90 days for appeal from discriminatory discharge of employees and (2) if so, is Hottes entitled to back pay?

I. In support of trial court's adjudication Department leans heavily on § 19A.14, The Code 1973, which provided, to the extent here relevant:

"*Any employee who is discharged*, suspended, or reduced in rank or grade, *except during his probation period*, may appeal to the appointing authority and if not satisfied, *may, within thirty days after such discharge*, reduction or suspension *appeal to the commission for review thereof.* \* \* \* *If the commission finds that the action complained of was taken by the appointing authority for any political, religious, racial, national origin, sex, age or nonmerit reasons, the employee shall be reinstated to his former position without loss of pay for the period of the suspension.* \* \* \*." (emphasis supplied).

Defendants concede the words "except during his probation period" remove Hottes from the scope of § 19A.14. Further invoked, however, is § 19A.18 which then stated in pertinent part:

"No person shall be appointed or promoted to, or demoted or discharged from, any position in the merit system, or in any way favored or discriminated against with respect to employment in the merit system because of his political or religious opinions or affiliations or race or national origin or sex, or age."

Defendants then conclude "A careful reading of [§§ 19A.14 and 19A.18] does not reveal any time limitation for appeal from political discrimination by a probationary employee." It is attendantly urged the limitation for Hottes' appeal is thus prescribed by rule 12.6(19A), I.D.A. (1973), at 650:

"Any applicant or employee who has reason to believe that he has been discriminated against because of religious or political opinions or affiliations or race or national origin or any other nonmerit factor in any personnel action including denial of transfer, may appeal to the commission. Such appeal shall be filed in writing *and within 90 calendar days of the alleged discrimination.* The commission shall hear the appeal at its next regularly scheduled meeting, or at special meeting as the commission shall direct, and give its written decision within seven calendar days of the hearing date." (emphasis supplied).

Reduced to bare essentials, defendants fabricate a "statutory void", then attempt to fill same by misplaced reliance on rule 12.6(19A), quoted above. They initially urge Code chapter 19A singles out unfair discriminatory employment practices for special treatment. It is supportively contended Code § 19A.14, *supra,* imposes a 30 day appeal limitation for discharge, suspension, or reduction in rank, *generally.* Then, the argument continues, Code § 19A.18, barring discriminatory discharge of any person within the merit system, prescribes no appeal time limitation. Based upon the "internal structure" of these statutes, defendants conclude "it is obvious that an employee victimized by political discrimination is entitled to special treatment, which should and does include a longer time limitation for appeal by virtue of Merit Rule 12.6, which allows an employee to appeal from political discrimination for ninety calendar days."

As revealed *infra,* the foregoing contention is devoid of substance.

■ II. Department has conceded a probationary employee does have the right to appeal his or her discharge when discrimi-

nation is involved. For reasons hereafter stated, however, this concession is accorded no force or effect.

While an administrative agency's construction of statutes and the rules it administers is entitled to weight, "[a]n administrative body may not make law or change the legal meaning of the common law or the statutes." *Holland v. State of Iowa,* 253 Iowa 1006, 1010, 115 N.W.2d 161, 164 (1962). Phrased otherwise, this court is not bound by Department's views regarding Code chapter 19A.

The only apparent explanation advanced for asserting a probationary employee has the right to appeal his or her discriminatory discharge stems from § 19A.18, quoted *supra,* which says, in part, no person shall be discharged because of "political * * * opinions or affiliations * * *." Assuming, for purpose of discussion only, "no person" means "no permanent *or* probationary employee", the question raised is whether the legislature intended probationers have appellate rights when discharged for discriminatory reasons and if so, whether rule 12.6(19A), *supra,* effectively confers such rights.

Apparently plaintiff and defendants have both overlooked § 19A.9(8), The Code 1973, which says:

"The merit employment commission shall adopt and may amend rules for the administration and implementation of this chapter in accordance with chapter 17A. The director shall prepare and submit proposed rules to the commission. The rules shall provide:

"* * * *

"8. *For a probation period of one year, excluding educational or training leave, before appointment may be made complete, and during which period a probationer may be discharged* or reduced in class or rank, or replaced on the eligible list. The appointing authority shall within ten days prior to the expiration of an employee's probation period notify the director in writing whether the services of the employee have been satisfactory or

unsatisfactory. If the employee's services are unsatisfactory, he shall be dropped from the payroll on or before the expiration of his probation period. If satisfactory, the appointment shall be deemed permanent. *The determination of the appointing authority shall be final and conclusive.*" (emphasis supplied).

The last sentence, *supra,* militates strongly against defendants. In other words, the legislature thereby generally expressed the intention that probationary employees have no appeal right. See also rule 9.2(19A), I.D.R. (1973), at 645; III Iowa Administrative Code (1975), rules 570–8.2(19A), ch. 8 at 1, 570–9.2(19A), ch. 9 at 1.

In this area statutes which label administrative action as "final" have been held to bar review by direct appeal, provided the administrative body or official has jurisdiction over the parties and subject matter in controversy. See *County Board of Education v. Parker,* 242 Iowa 1, 7–10, 45 N.W.2d 567 (1951), and citations.

Also, Code § 19A.14, *supra,* manifestly afforded a means of appeal to the merit employment commission *by permanent employees only.* Had the general assembly intended otherwise it could have easily so stated.

Incidentally, § 19A.14 has since been amended in an attempt to conform with the Iowa Administrative Procedure Act, chapter 17A, The Code 1975.

■ Significantly, no provision was made anywhere in chapter 19A, The Code 1973, for appellate procedure by probationary employees. Consequently, review of plaintiff Department's decision to discharge Hottes was not legislatively intended to be entertained on direct appeal. See R. Bezanson, "Judicial Review of Administrative Action in Iowa", 21 Drake L.Rev. 1, 24–25 (1971). See also *Johnson Machine Works, Inc. v. Parkins, 171 N.W.2d 139, 143 (Iowa 1969); cf. Prosser v. Butz,* 389 F.Supp. 1002, 1005 (N.D.Iowa 1974). Moreover, appellate review is purely statutory and subject to strict construction. See *Antrim v. Civil Service Com'n of City of Des Moines,* 261 Iowa 396, 401, 154 N.W.2d 711 (1967).

III. Defendants obviously misconstrue statutory absence of probationary employee appeal limitations to mean our general assembly impliedly delegated to Commission the right to prescribe, by rule, an appropriate time limit.

At the outset it is generally held discharged probationary employees are not entitled to the same protection afforded those on permanent status. See 67 C.J.S. Officers § 62d(3), at 264–267. See also *Schlichting v. Bergstrom,* 13 Or.App. 562, 511 P.2d 846, 849–853 (1973).

■ Next, in judicially construing applicable statutes, the polestar is unquestionably legislative intent. As articulated in *Peters v. Iowa Emp. Security Com'n.,* 235 N.W.2d 306, 310 (Iowa 1975):

"We are required to construe chapter 19A as a whole, giving effect to every part, in ascertaining the intent of the legislature. We should avoid strained, impractical or absurd results; and we should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. [Citation]."

It is also for us to determine legislative intent "as shown by what the legislature said, rather than what it should or might have said." Rule 344(f)(13), Iowa R.Civ.P.

Distinguishably, the problem at hand does not involve improper delegation of authority by the legislature to an administrative agency, but rather a matter of ultra vires, i. e., agency rulemaking beyond the scope of powers properly delegated by the general assembly. While undue delegation of legislative power is an issue of constitutional dimension (not instantly present), ultra vires (here involved) is purely a matter of statutory construction and our review is accordingly confined.

Mindful thereof we look now to the scope of judicial inquiry thus aptly summarized in 1A Sutherland, Statutory Construction, § 31.02, at 354–355 (Sands 4th ed. 1972):

"Before an administrative regulation has the force and effect of law it must comply with the following requirements: (1) the statute which created the administrative agency must comply with constitutional requirements of substance and procedure; (2) the statute must authorize specifically or by necessary implication the issuance of rules and regulations by the agency; and (3) the rule or regulation adopted must be within the authority of the agency and must have been adopted according to the procedure prescribed by the statute.

"The legislative act is the charter of the administrative agency and administrative action beyond the authority conferred by the statute is ultra vires. Although an administrative regulation must itself be consistent with the constitution, this alone is not enough. It must also be authorized by the statute creating the agency.

" * * *

"Since the central legislative body is the source of and administrative agency's power, the provisions of the statute will prevail in any case of conflict between a statute and an agency regulation."

■ By application of the foregoing principle, it follows rule 12.6(19A), *supra,* is unquestionably in conflict with and cannot pass muster under the provisions of Code ch. 19A, particularly §§ 19A.9(8) and 19A.14. While § 19A.18 proscribes discrimination as a matter of *substantive* law, it still remains § 19A.14 prescribes the *procedural* mechanism by which discriminatory treatment may be appealed, *but only by permanent employees.* Therefore, to the extent rule 12.6(19A) purportedly authorized an appeal to Commission by "any applicant or employee" having reason to believe he or she had been discriminated against, it plainly conflicted with legislative intent that probationary employees have no such appellate right. By the same token, insofar as rule 12.6(19A) accords even *permanent* employees a 90 day period within which to appeal, it too is facially inconsistent with the legislature's determination that dis-

charged permanent employees may appeal to Commission "within thirty days after such discharge * * *." Code § 19A.14.

IV. Additionally, our determination that rule 12.6(19A) is ultra vires, thus void, finds abundant support in Iowa case law.

■ Without question the validity of an agency rule is ultimately a matter for determination by the judiciary, not the agency itself. As stated in *Michigan-Wisconsin Pipe Line Co. v. Johnson,* 247 Iowa 583, 594, 73 N.W.2d 820, 827 (1955):

"It is true, although not controlling, courts give weight to the construction of statutes of doubtful meaning by administrative officials charged with their operation and enforcement. *Yarn v. City of Des Moines,* 243 Iowa 991, 996, 54 N.W.2d 439, and cases cited. However, courts should not necessarily follow such rulings when on thorough study it is found the prior interpretations and rulings are not sound."

And in *Nishnabotna Valley Rural Elec. Coop. v. Iowa P. & L. Co.,* 161 N.W.2d 348, 352 (Iowa 1968), we aptly observed:

"In *Consolidated Freightways Corporation of Delaware v. Nicholas,* supra, 258 Iowa [115] at pages 121–122, 137 N.W.2d [900] at page 905, we said: 'However, it must be remembered that the plain provisions of the statute cannot be altered by an administrative rule or regulation, no matter how long it has existed or been exercised by administrative authority. *Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission,* 252 Iowa 500, 507, 107 N.W.2d 553, 558, and citations. To permit a commission or board to change the law by giving to the statute or Act an interpretation or construction of which its words are not susceptible would be a departure from the meaning expressed by the words of the statute. *Hindman v. Reaser,* 246 Iowa 1375, 72 N.W.2d 559. No authority appears herein for the board to fix or alter the formula for prorationing by agreement, and its attempt to do so must fail.' "

■ Phrased differently, administrative rules must be reasonable and consistent with legislative enactments. See *Holland v. State of Iowa,* 253 Iowa at 1010, 115 N.W.2d 161. To the same effect is this statement in *Bruce Motor Freight, Inc. v. Lauterbach,* 247 Iowa 956, 961, 77 N.W.2d 613, 616 (1956): "Rules cannot be adopted that are at variance with statutory provisions, or that amend or nullify legislative intent." See also 73 C.J.S. Public Administrative Bodies and Procedure § 94.

Further discussion will serve no useful purpose. We now hold (1) as a probationary employee, Hottes was not entitled, under ch. 19A, to appeal his discharge for any reason; (2) Department's concession of a limited right of appeal for probationary employees when discharged for discriminatory reasons is not binding on this court; and (3) rule 12.6(19A) has at all times here concerned been void because it conflicted with relevant provisions of the 1973 Code, and is therefore ultra vires.

V. Intervenor Hottes raises three additional closely related arguments in support of his claim that, even if rule 12.6 (19A) be found ineffective, he is nonetheless entitled to appeal his dismissal within 90 days, pursuant to rule 12.6(19A), *supra.* This contention is totally devoid of substance.

First referred to by Hottes is § 19A.2, The Code 1973 (now repealed). It established a six member legislative body, identified as the "departmental rules review committee", which studied rule 12.6(19A) prior to adoption thereof and reported no objection. Intervenor maintains this implied Committee approval means rule 12.6(19A) comports with legislative intent. Again, Hottes overlooks another provision in ch. 17A which directly rebuts his argument. In material part § 17A.11, The Code 1973 (now repealed), dispositively stated:

"[A]ny action or inaction by the departmental rules review committee on any rule, and any inaction by the general assembly on any rule, *shall not be construed as approval or enactment of any rule by the general assembly.*" (emphasis supplied).

■ Second Hottes seeks to estop the attorney general from questioning the validity of rule 12.6(19A). Pursuant to §§ 17A.5 and 17A.6, The Code 1973 (now repealed) the attorney general was required to pass upon the validity of an agency rule before formal adoption thereof. Due to absence of such an opinion, Hottes insists the attorney general may not now be heard to argue the rule is invalid. In effect, Hottes maintains the attorney general approved the rule "by implication". Upon this premise Hottes says he was entitled to rely on the apparent validity of said rule. His argument is untenable for two reasons: First, courts, not the attorney general, are the final arbiters as to validity of the rule. Second, the attorney general is not a party to this controversy. In fact, he here appears only as counsel for Department as § 421.19, The Code 1973, required.

■ Third, intervenor invokes the equitable estoppel concept. He supportively contends, in substance, the State of Iowa permitted him to rely on rule 12.6(19A) to his detriment. Ordinarily estoppel cannot be relied upon when not pled. This court has, however, considered estoppel arguments not specifically pled in trial court, but there submitted without objection as an issue, and such is apparently the situation at hand. See *S & M Finance Co. Fort Dodge v. Iowa State Tax Comm'n.* 162 N.W.2d 505, 509 (Iowa 1968). Be that as it may, Hottes could not possibly have been prejudiced by any reliance on rule 12.6(19A) because, as noted *supra,* he had no right to appeal his dismissal in the first place. Consequently, it is immaterial whether he did or did not rely on rule 12.6(19A). Moreover, Hottes fails to show how the four necessary elements of equitable estoppel are here met. See generally *Manson State Bank v. Diamond,* 227 N.W.2d 195, 201, et seq. (Iowa 1975).

VI. Trial court correctly sustained the certiorari writ and attendantly annulled proceedings before the Iowa Merit Employment Commission, although not for the same reasons above set forth. But such variance is instantly immaterial. See *Buch-*

*hop v. General Growth Properties, etc.,* 235 N.W.2d 301, 304 (Iowa 1975); *Schnabel v. Vaughn,* 258 Iowa 839, 845, 140 N.W.2d 168 (1966).

VII. For self-evident reasons, the issue as to Hottes' entitlement to back pay is not reached.

AFFIRMED.